```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF WEST VIRGINIA
                       AT CHARLESTON
```

JEFFREY RANK and
NICOLE RANK

    Plaintiff

v.                                      Civil Action No.: 2:04-0997

GREGORY J. JENKINS,
Deputy Assistant to the President of the
United States and Director of the
White House Office of Presidential
Advance; W. RALPH BASHAM, Director
of the United States Secret Service;
TOM HAMM; CHRIS SMITH;
OFFICER TIM M. JOHNSON;
SERGEANT H.E. SHAVER;
OFFICER G. SCOTT FERNATT;
TROOPER JOHN HAMILTON; and
SERGEANT H.P. EPPERHART

    Defendants

## MEMORANDUM OPINION AND ORDER

Pending is defendants Gregory J. Jenkins' ("Jenkins") and W. Ralph Basham's ("Basham") motion to dismiss filed February 25, 2005.[1]

I.

President George W. Bush delivered a public address at the West Virginia State Capitol Complex on July 4, 2004.

---

[1] The motion ripened on June 9, 2005, upon the filing of defendants' reply brief.

Plaintiffs allege that at all relevant times Jenkins was the Director of the White House Office of Presidential Advance, a governmental unit charged with "organizing and directing visits by the President of the United States outside the White House complex in Washington D.C." (Am. Compl. at ¶ 5). Basham was the Director of the United States Secret Service, the federal law enforcement agency principally responsible for protecting the President. (Id. ¶ 6).

Plaintiffs further allege that "[t]he Office of Presidential Advance and the Secret Service are responsible for the structure of activities at each location visited by the President . . . ." (Id. ¶ 14). They further contend that the Office of Presidential Advance and the Secret Service, acting through staff, coordinated the President's July 4 appearance. (Id. ¶ 16). One component of that coordination was the "Defendants[']" design of a ticketed admissions process. (Id. ¶ 17).

On July 3, 2004, Ms. Rank learned of available tickets for the event through her employer, the Federal Emergency Management Agency (FEMA). (Id. ¶ 18). The Ranks ultimately obtained tickets 115836 and 115848. (Id.). The tickets provided that patrons would be seated on a first come, first served basis,

2

without regard to either political affiliation or affinity with the President or his policies. (Id. ¶ 19).

On July 4, 2004, plaintiffs entered the area designated for the address. (Id. ¶ 22). Subsequent to their admission, but prior to the President's arrival,

> the [Ranks] removed their outer shirts to display an expression of their disagreement with the policies of President Bush. The front of both Plaintiffs' t-shirts bore the international "no" symbol (a circle with a diagonal line across it) superimposed over the word "Bush." Both shirts also displayed on the left sleeve a small photograph of President Bush with the international "no" symbol superimposed over it, and on the right sleeve a "Kerry" button. The message on the back of Nicole Rank's t-shirt was "Love America, Hate Bush." On the back of Jeffrey Rank's shirt was the message "Regime Change Starts at Home."

(Id. ¶ 23).

A short time later, the Ranks were approached by Tom Hamm and Chris Smith, whom they claim were serving as "White House Event Staff Member[s]." (Id. ¶ 5). Smith and Hamm purportedly informed the Ranks that they could not remain on the grounds while wearing t-shirts critical of the President. (Id. ¶ 24). When plaintiffs refused to remove the shirts, they were arrested by law enforcement at Smith's and Hamm's direction. (Id. ¶ 25-26). The law enforcement officers who removed the Ranks had previously been told that "White House Staff had the authority to revoke any person's ticket . . . ." (Id. ¶ 25).

3

Attached as an exhibit to the Ranks' response brief is an Associated Press article concerning the ultimate dismissal of the state charges against them. Charleston Mayor Danny Jones was reported as stating that the officers who made the arrests were acting under the direction of the Secret Service.

Regarding the arrests, the plaintiffs allege, in pertinent part, that:

> [u]pon information and belief, the actions taken by the Defendants with respect to the Plaintiffs were taken pursuant to policies established by Defendants Jenkins and/or Basham. Those policies did not include excluding from the event persons who wore t-shirts and pins supportive of the President.

(Id. ¶ 27).

On September 14, 2004, the Ranks instituted this action, later amending the complaint on January 25, 2005. Plaintiff's allege that the defendants' actions violated their First Amendment rights to "peacefully assemble, speak, and petition for redress of grievances." (Id. ¶ 33).

On February 25, 2005, Basham and Jenkins moved to dismiss. Defendants seek dismissal on two separate grounds. First, they contend the Ranks have not alleged the necessary minimum contacts to support the exercise of personal

4

jurisdiction.  Second, they claim entitlement to qualified immunity.[2]  Both assertions spring from a common root: Basham and Jenkins contend that plaintiffs fail to allege the two defendants were "personally complicit" in the constitutional violation.

II.

A.  Governing Standards

A motion to dismiss pursuant to Rule 12(b)(6) should not be granted "unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief."  <u>Greenhouse v. MCG Capital Corp.</u>, 392 F.3d 650, 655 (4th Cir. 2004) (quoting <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993)).  Additionally, the "complaint [is viewed] in the light most favorable to the plaintiff and . . . all well-pleaded allegations" are accepted as true.  <u>South Carolina Dept. Of Health & Environmental Control v. Commerce & Industry Ins. Co.</u>, 372 F.3d 245, 255 (4th Cir. 2004) (quoting

---

[2]The defendants also moved on a third ground, asserting that prospective injunctive relief against them would be inappropriate, given plaintiffs' failure to allege a threat of expected future harm.  In response, plaintiffs concede that they are not seeking relief against the two defendants beyond monetary damages.

**Franks v. Ross**, 313 F.3d 184, 192 (4th Cir. 2002)).  Further, even beyond the facts alleged, the court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ."  **Edwards v. City of Goldsboro**, 178 F.3d 231, 244 (4th Cir. 1999).

      A complaint need not "make a case" against a defendant or "forecast evidence sufficient to prove an element" of the claim.  **Chao v. Rivendell Woods, Inc.**, 415 F.3d 342, 349 (4th Cir. 2005) (quoting **Iodice v. United States**, 289 F.3d 270, 281 (4th Cir. 2002)).  Rather, it need only "allege facts sufficient to state elements" of the claim.  **Id.**; **Bass v. E.I. Dupont de Nemours & Co.**, 324 F.3d 761, 765 (4th Cir. 2003) (noting complaint must "allege facts sufficient to state all the elements of" a claim)).

      As noted by the leading commentators on the Federal Rules of Civil Procedure, "the purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case."  5B Charles Alan Wright & Arthur R. Miller, **Federal Practice and Procedure** § 1356 (3d ed. 2004).

6

A review of the generous notice pleading standard is also in order:

> [A] complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. "The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court."

<u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 512-13 (2002) (citations omitted).

B.  Analysis

The governing Rule 12(b)(6) standards are plaintiff-centered and require a court to read offensive pleadings very liberally. Nevertheless, the amended complaint is enigmatic. Coupled with the pleading's uncertain scope insofar as Basham and Jenkins are concerned is plaintiffs' professed willingness to amend the amended complaint to allege new facts. (Pl.'s Resp. at 2-3). This representation was then countered by the defendants, who accused plaintiffs of improperly attempting to amend their

complaint with new, more specific allegations contained in the memorandum in opposition to the motion to dismiss.  In view of these considerations, the better course is to permit plaintiffs an opportunity anew to plead every allegation that might aid the court's inquiry, and receive the defendants' response thereto, on the proper scope of the further amended complaint and the appropriate exercise of personal jurisdiction.

The court, accordingly, ORDERS that defendants' motion to dismiss be, and it hereby is, denied without prejudice.  The court ORDERS the second amended complaint to be filed and served no later than March 10, 2006.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED:  February 28, 2006

John T. Copenhaver, Jr.
United States District Judge